IN THE UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF ARKANSAS
                             FORT SMITH DIVISION


DINORA DEL CARMEN RIVERA RIVAS                                    PETITIONER

v.                           No. 2:10-CV-02098

CHRISTIAN NATHAN SEGOVIA                                          RESPONDENT


**ORDER**

Currently before the Court is Petitioner Dinora del Carmen Rivera Rivas's Petition for Return of Child to Petitioner. (Doc. 1). The Court held an evidentiary hearing on December 14, 2010. Both parties testified at the hearing, with Petitioner appearing telephonically from El Salvador.[1] Petitioner had local counsel present in the courtroom, and Salvadoran counsel present with her in El Salvador. An interpreter was also provided by the Court. Respondent Christian Nathan Segovia presented testimony from various individuals on his behalf, and both sides filed numerous exhibits under seal. The Court also conferred briefly with the minor child in camera with the judge and a clerk, but without the child's parents or their lawyers present. After considering the testimony and other evidence presented, the Court finds that Petitioner's Petition should be and is GRANTED and the minor child

---

[1] The Court informed counsel for Petitioner that a Motion to Continue would be granted if Petitioner would like to try to make other arrangements, but counsel for Petitioner informed the Court that Petitioner would prefer to continue through teleconference arrangements made by the Court so that the case could be more expeditiously resolved.

shall be promptly RETURNED to El Salvador for the reasons reflected herein.

**I. Background**

The minor child, K.S.R., was born to Dinora del Carmen Rivera Rivas and Nathan Christian Segovia in El Salvador on August 30, 2003. The parents were never married. Both parents were born in El Salvador, but Segovia, previous to his relationship with Rivas and the birth of K.S.R., immigrated to the U.S. and obtained dual citizenship. The Respondent is now a citizen of both the United States and El Salvador. K.S.R. was granted U.S. citizenship shortly after birth in addition to her Salvadoran citizenship. After her birth, K.S.R. lived continuously with her mother in El Salvador. Segovia visited K.S.R. occasionally in El Salvador but maintained his home with his family in Arkansas. Segovia also spoke frequently with K.S.R. by telephone.

On April 5, 2009, Segovia took K.S.R., with Rivas's permission, to the United States for what was to be a one week vacation to Disneyland and an opportunity for K.S.R. to meet her half-siblings. Segovia and K.S.R. were scheduled to return to El Salvador on April 11, 2009. Rivas contends that when she called to check on K.S.R. after the flight to the US, Segovia informed her that they had not gone to Disneyland but were, instead, in Arkansas at Segovia's residence. Segovia at some point told Rivas that he thought it would be better for K.S.R. if she lived with him in the

United States. Both parties claim that they attempted to negotiate the return of the child, but no agreement was ever reached.

K.S.R. is now 7 years old. Segovia presented evidence indicating that K.S.R. is well-adjusted to her life and family in the United States. She attends school and receives good grades. She has also gone on family trips with her father, step-mother, and half-siblings, and evidence presented by Segovia indicates that she gets along well with her half-siblings. Phone records filed by Segovia, and testimony from both parties, indicate that Rivas has had frequent contact with the family since K.S.R.'s arrival in the United States, although Rivas claims that her contact with K.S.R. has been limited by Segovia.

Rivas filed a complaint pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention") and the International Child Abduction Remedies Act ("ICARA") in this Court on July 9, 2010. The Convention came into effect in the U.S. in 1988 through the enactment of ICARA and was ratified between the U.S. and El Salvador in 1993. United States District Courts have been granted original jurisdiction over actions arising under the Hague Convention. 42 U.S.C. §11603. Rivas seeks the prompt return of K.S.R. to El Salvador.

In response, Segovia raises three affirmative defenses under the Convention. First, Segovia contends that more than a year passed between retention of the child and commencement of

proceedings in contravention of Article 12 of the Convention, and the child is now "settled in her environment." Second, Segovia contends that Article 13 of the Convention does not require return of the child if it is established by clear and convincing evidence that return of the child will result in psychological or physical harm. Third, Segovia contends that the child need not be returned, under Article 12, if the child has "attained an age and degree of maturity at which it is appropriate to take account" of their views and they object to being returned. During the evidentiary hearing, Segovia focused on the "well-settled defense" but the Court will nonetheless address each defense in turn.

## II. Discussion

The Hague Convention was created "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures for their prompt return to the State of their habitual residence." Hague Convention, Preamble, 51 Fed.Reg. 10,498. "[T]he Convention prohibits a court from adjudicating the merits of an underlying custody dispute, and ... the Convention's primary purpose is to restore the status quo and deter parents from crossing international borders in search of a more sympathetic court." *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 376 (8th Cir. 1995) (citing *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir. 1995)). Therefore, the inquiry of this Court must be narrowly constrained to determining the merits of the abduction

claim only, without addressing the merits of any underlying custody issues. *Rydder*, 49 F.3d at 372.

The Court notes that some of Segovia's allegations were previously considered in Arkansas State Court, in an ex parte proceeding which ultimately granted custody to Segovia. The Court emphasizes, however, that Article 16 of the Hague Convention provides that proceedings in an abducted-to-nation (here the United States) may not determine custody issues. Hague Convention, Art. 16. The Convention imposes and requires a preliminary determination of which country has jurisdiction to consider custody questions. *Silverman v. Silverman*, 338 F.3d 886, 890 n.8 (8th Cir. 2003). While this Court, in its discretion, may take into consideration the reasoning behind the Arkansas State Court's findings, *Miller v. Miller*, 240 F.3d 392,402 (4th Cir. 2001), this Court is not bound by those findings and limits itself to consideration of only the narrow question presented by Rivas's Petition under the Convention.

**A. Petitioner's Burden**

The burden is initially on Rivas to establish, by a preponderance of the evidence, that K.S.R. has been wrongfully removed or retained within the meaning of the Convention. 42 U.S.C. §11603(e)(1). Under the Convention, removal or retention of a child is considered wrongful when (a) "it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the

removal or retention; and (b) at the time of the removal or retention those rights were actually exercised[.]" Hague Convention, Art. 3.

Segovia does not dispute that Rivas could meet her initial burden of establishing wrongful retention under the Convention. Instead, Segovia relied in his arguments on exceptions to the Court's obligation to return a child under the Convention. Accordingly, the Court finds that Rivas could satisfy her burden of establishing that K.S.R. was wrongfully retained in the United States by Segovia.

**B. Respondent's Burden to Establish Applicability of an Article 12 or Article 13 Exception**

Once Rivas establishes that wrongful retention has occurred, Segovia has the burden of proving the applicability of any exceptions under the Convention. 42 U.S.C. §11603(e)(2). The Eighth Circuit Court of Appeals has established that courts must construe the exceptions contained in the Convention narrowly. *Rydder*, 49 F.3d at 372. "In fact, a federal court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention." *Antunez-Fernandes v. Connors-Fernandes*, 259 F. Supp.2d 800, 812 (N.D. Iowa 2003) (quoting *Miller*, 240 F.3d at 402); *see also Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 278 (3d Cir. 2007). Segovia raises three affirmative defenses under the

Convention.

### a. Well-Settled Defense

A court may not be required to return a child to her habitual residence if Convention proceedings are not brought within one year of the date of the wrongful removal and the child has settled into her new environment. Hague Convention, Art. 12. Segovia must prove the applicability of this exception by a preponderance of the evidence. 42 U.S.C. §11603(e)(2)(B).

"[T]he term 'commencement of proceedings', as used in article 12 of the Convention, means with respect to the return of a child located in the United States, the filing of a petition" in any court with jurisdiction in the place the child is located at the time the petition is filed. 42 U.S.C. §11603(f). In this case, Segovia left El Salvador with K.S.R. on April 5, 2009. They were to return to El Salvador on April 11, 2009. Rivas did not file this Complaint until July 9, 2010. Using either of the April dates, more than a year passed between the wrongful removal/retention and the commencement of proceedings. However, the Respondent should not benefit from the effects of his own actions and the barriers the Petitioner faces in bringing an action. *Antunez-Fernandes*, 259 F. Supp. 2d at 815; *see also* 51 Fed. Reg. 10,494, 10,509 (1986) ("The reason for the passage of time, which may have made it possible for the child to form ties to the new country, is also relevant to the ultimate disposition of the return petition."). In this case, both

parties admit that there were ongoing discussions about arriving at a mutual agreement for the return of the child. Although an agreement was never reached, it would not be a stretch of logic for Rivas to have believed that Segovia may have eventually returned K.S.R. without the intervention of the courts. Also, the exhibits filed under seal indicate that Rivas started the process required by the Convention, by filing an Application with the Central Authority in El Salvador, in October of 2009.

Segovia should not be allowed to benefit from any lingering hope that Rivas may have had in reaching a more amicable solution or for any obstacles Rivas may have faced in ensuring that her application was processed expeditiously. For these reasons, the Court finds that the reasons for the passage of time after K.S.R. was removed from El Salvador, mitigate against allowing Segovia to benefit from the effects of his own actions in wrongfully retaining K.S.R. in the United States.

Furthermore, even if more than a year has passed since the wrongful removal or retention, the Respondent must still prove, by a preponderance of the evidence, that the child is well-settled in her new environment.

> [N]othing less than substantial evidence of the child's significant connections to the new country is intended to suffice to meet the respondent's burden of proof. Moreover, any claims made by the person resisting the child's return will be considered in light of evidence presented by the applicant concerning the child's contacts with and ties to his or her State of habitual residence.

51 Fed.Reg. 10,494, 10,509 (1986). Segovia has presented much evidence that K.S.R. is well-settled in Arkansas. K.S.R. has received good grades in school and her artwork was entered into a local contest. Segovia has also provided pictures of K interacting with family and friends in various situations. Both Rivas and Segovia, however, testified that K.S.R. continues to have frequent contact with her mother. K.S.R. has other family in El Salvador as well, including half-siblings. Therefore, although K.S.R. has, naturally, grown accustomed to her environment in the United States over the past year, she has also maintained consistent ties with her habitual residence of El Salvador. While the Court commends Segovia for K.S.R.'s good academic performance, the Court has no doubt that K.S.R. would be academically successful in El Salvador. Finally, K.S.R., in speaking directly with the Court in camera, with only the judge and a clerk present, expressed that, while she enjoyed living in the United States, she missed her mother.

The Court finds, without delving into issues best left to a custody determination, that Segovia has not met his burden of establishing, by a preponderance of the evidence that the "well-settled defense" should apply in this case and prevent the return of K.S.R. to her habitual residence of El Salvador. Even had Segovia, been able to establish this affirmative defense, the Court would find, in its discretion, that ordering K.S.R.'s return would

nevertheless be necessary to further the aims of the Convention. The Court notes that Segovia retains Salvadoran citizenship but chose not to avail himself of any judicial remedies available to him in El Salvador to seek custody of his daughter. Instead, he chose to retain his daughter in the United States and seek custody of K.S.R. here. This is precisely the kind of situation that the Convention was designed to discourage.

### b. Grave Risk Defense

The Court is not bound to order the return of the child if the person who opposes return establishes that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, Art. 13(b). Segovia must prove the applicability of this exception by clear and convincing evidence. 42 U.S.C. §11603(e)(2)(A).

At the evidentiary hearing, Segovia argued that K.S.R. would be at risk if returned to El Salvador because she may have witnessed an act of domestic violence between her mother and another woman. Rivas, however, denied that any such incident had ever taken place. Regardless of whether the incident occurred, the type of risk Segovia sought to establish would not rise to the kind of "grave risk" contemplated by the Convention. "[O]nly severe potential harm to the child will trigger this Article 13b exception." *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 377 (8th

Cir. 1995). There are two types of grave risk that are appropriate under Article 13(b): sending a child to a 'zone of war, famine, or disease,' or in cases of serious abuse or neglect." *Id.*(citing *Friedrich II*, 78 F.3d at 1060 and *Blondin v. Dubois*, 238 F.3d 153, 162 (2d Cir. 2001)). This exception was not intended to apply to a "return to a home where money is in short supply, or where educational or other opportunities are more limited . . . An example of an 'intolerable situation' is one in which a custodial parent sexually abuses the child." 51 Fed. Reg. 10494.

The Court finds that Segovia was unable to establish, by clear and convincing evidence, that K.S.R. would be exposed to a grave risk of harm if returned to El Salvador. Furthermore, while the Court does not take lightly any allegation of domestic violence, the Court finds that the incident Segovia sought to establish in this case would not be enough to trigger the application of the "grave risk defense" to prevent the return of the child.

**c. Mature Child Defense (Convention, Article 13)**

The Court "may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention, Art. 13. Segovia must prove the applicability of this exception by a preponderance of the evidence. 42 U.S.C. §11603(e)(2)(B).

While not contending the applicability of this exception at

-11-

the evidentiary hearing, Segovia did argue for it in his Response to the Petition. (Doc. 6). Whether "a child is of sufficient age and maturity is a fact-intensive process." *Dietz v. Dietz*, 349 Fed. Appx. 930, 934 (5th Cir. 2009). A "'court must apply a stricter standard in considering a child's wishes when those wishes are the sole reason underlying a repatriation and not part of some broader analysis,' such as whether the child would suffer a grave risk of harm if returned to his or her habitual residence." *Tsai-Yi Yang*, 499 F.3d at 278-79 (quoting *de Silva v. Pitts*, 481 F.3d 1279, 1286 (10th Cir. 2007)). A child's expression of a generalized desire to remain in a familiar place, without more particularized objections to being returned, are generally insufficient to invoke the application of this exception. *See id.* (Characterizing District Court's finding that the child's "generalized desire" to remain was "similar to that of any ten-year-old having to move to a new location" and declining to find clear error).

The Court, without making a finding as to whether a seven-year-old may have the sufficient age and maturity to invoke this exception, finds that K.S.R. is not of sufficient age and maturity to warrant the application of the exception in this particular case. Furthermore, K.S.R. did not express any particularized objections to being returned to El Salvador during in camera conversation. Therefore, the Court finds that application of this exception is not appropriate in this case.

**III. Conclusion**

For the reasons reflected herein, it is the finding of this Court, that K.S.R., the minor child of Dinora del Carmen Rivera Rivas and Christian Nathan Segovia, was wrongfully retained in the United States from her habitual residence of El Salvador and that she must now be promptly returned. The Court also finds that none of the affirmative defenses available under the Hague Convention apply in this case and, furthermore, that return of the child will further the aims of the Convention. No one, especially this Court, can be critical of a father desiring the best for his daughter. However, what is best for the child is best determined by a court in El Salvador where both parents are citizens.

Accordingly, it is the order of this Court that:

1. Petitioner Dinora del Carmen Rivera Rivas's Petition for Return of Minor Child (Doc. 1) is hereby **GRANTED**.
2. Petitioner and Respondent's minor child, K.S.R., shall be **RETURNED** to El Salvador, at Respondent's expense, within fourteen (14) days of the filing date of this Order, with Respondent should he desire to accompany her.
3. Respondent is ordered to make all necessary arrangements associated with returning the child to El Salvador. If Respondent is unable or unwilling to accompany the child in keeping with this order, Respondent shall make other appropriate arrangements for the child to be safely

    accompanied during her return to El Salvador. However, K.S.R. may not be placed in the care or control of a third party for her return without the Court's express permission.

4. Respondent shall not - absent leave of the Court - remove the minor child from the Western District of Arkansas pending her return to El Salvador.

5. Counsel for Respondent shall file a notice with the Clerk of Court immediately upon K.S.R.'s arrival in El Salvador indicating that Respondent has fully complied with the terms of this order.

6. No award of attorneys' fees or other costs, apart from the aforementioned transportation costs associated with the child's return, will be made at this time. The Court will consider any separate petition regarding this issue that Petitioner may file, upon motion properly made.

7. Any remaining pending motions in this case are DENIED, as moot.

    **IT IS SO ORDERED this 28th day of December, 2010.**

                                          /s/ Robert T. Dawson
                                          Honorable Robert T. Dawson
                                          United States District Judge